J-A03010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PAUL MCKENZIE | |
| Appellant | No. 884 MDA 2014 |

Appeal from the Judgment of Sentence December 16, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000409-2012

BEFORE:  MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED APRIL 06, 2015**

Appellant, Paul McKenzie, appeals from the December 16, 2013 aggregate judgment of sentence of 26½ to 53 years' imprisonment after a jury found him guilty of aggravated assault, rape by forcible compulsion, aggravated indecent assault by forcible compulsion, and unlawful restraint.[1] After careful review, we affirm.

The trial court set forth the facts of the violent sexual assault as follows.

> In this case, [K.N.] testified that [Appellant]
> strangled her multiple times to the point of losing

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 3121(a)(1), 3125(a)(2), and 2902(a)(1), respectively.

consciousness. The first time he strangled her was with his hands, the second time was with his [t]-[s]hirt that he had taken off and twisted into a straight line and then wrapped it around her neck, and the third time was with a shoelace he had removed from one of his sneakers. While [Appellant] was strangling [K.N] with the shoelace, she tried to get her fingertips underneath the shoelace so she could get some air. [K.N.] also testified that [Appellant] punched her in her head – behind the ears, on top of the head, and around her forehead. [K.N.] tried to block the blows by putting her hands over her head. [Appellant] also punched her in her back to get her to release her hands so he could continue punching her in the head. [K.N.] also testified that [Appellant] shoved his fingers up inside her [vagina] so hard that it pushed her back against the wall. [K.N.] also testified that [Appellant] raped her twice during this ordeal.

When [K.N.] tried to get away, [Appellant] caught up with her[,] grabbed her by her hair and around the neck[,] and dragged her back to the room. The next thing [K.N.] remembered was [Appellant] standing over her and taking his shoelace out of his shoe, telling her that "now you really f[***]ed up." Furthermore, throughout the entire ordeal, [Appellant] kept telling [K.N.] that "it was time to die," that he was going to kill her, and that she was going to die.

[K.N.]'s account of what occurred on November 4, 2011 into November 5, 2011 was corroborated by the injuries that were documented by Geneva Keirn, the SAFE Nurse at York Hospital. Ms. Keirn prepared body maps of those injuries and also took photos of the injuries sustained by [K.N.]. The kinds of injuries found on [K.N.] were:

- Abrasions and scratches to her chest; []

- Her left eye had redness to the inner area of the white of her eye, redness and blood in the sclera and around the eye; []

- 2 -

- Her back had swelling and redness; []

- Her buttocks had swelling and redness; []

- Her scalp had redness, pain and tenderness; []

- Her genital area had lacerations, redness, and tenderness; abrasions to the labia and bottom of the vagina; []

- Her left arm had redness; []

- Her right arm had abrasions and scratches; []

- Her left leg had swelling and redness, and red marks on her left upper thigh area and left lower leg; []

- Her left knee had red marks and abrasions and bruising; []

- Her right leg had swelling and redness; []

- Her right knee had abrasions and red marks; []

- Her right hand had swelling and redness to top of hand and fingers; []

- Her left hand had redness to all fingers extending to the palm and down to the thumb. There was redness, swelling, and purplish marks to her left thumb and parts of her left index finger; []

- The top of her left hand had redness and swelling to all fingers and extends to the top of the hand; and

- Her neck had various kinds of bruising, redness, abrasions, lines, and marks.

In addition, Dr. Wayne Ross, a forensic pathologist, examined the medical records of [K.N.], the SAFE [n]urse's notes and documentation of injuries, the photos of the scene, photos of [K.N.] taken by the SAFE [n]urse and by her family members and police, reviewed the police report and preliminary statements by [K.N.], and performed an analysis. His conclusions were consistent with [K.N.]'s account of what happened. Dr. Ross concluded that her various injuries were consistent with: [h]air being pulled[,] [b]lunt force trauma[,] [r]epeated strangulation[,] and [d]efensive wounds. Dr. Ross also concluded that [K.N.]'s injuries were inconsistent with consensual intercourse as there were multiple tears, and the injuries indicate a severe amount of force was used and penetration was significant and severe. In addition, Dr. Ross also testified that his findings are inconsistent with rough sex, [for the following reasons.]

1. [K.N.] was repeatedly beaten; []

2. [K.N.] had bruises all over her body; []

3. [K.N.] had traumatic alopecia where her hair had been torn from her head; []

4. [K.N.] had bruises all over her chest; []

5. There were at least five (5) areas of strangulation to the neck; []

6. There were bruises all over her body; and

7. The tears down at the vaginal introitus are inconsistent with rough sex.

Trial Court Opinion, 4/29/14, at 2-5 (citations omitted).

By criminal information filed on January 30, 2012, the Commonwealth charged Appellant[2] with the aforementioned offenses as well as attempted murder, rape by threat of forcible compulsion, sexual assault, aggravated indecent assault without consent, aggravated indecent assault by threat of forcible compulsion, false imprisonment, and terroristic threats.[3]  On September 3, 2013, a three-day jury trial commenced.  On September 5, 2013, the jury found Appellant guilty of aggravated assault, rape by forcible compulsion, aggravated indecent assault by forcible compulsion, and unlawful restraint.  The jury found Appellant not guilty of attempted murder. The remaining charges were *nolle prossed*.  A court-ordered sexually violent predator assessment was completed and Appellant was not determined to be a sexually violent predator.  N.T., 12/16/13, at 1.  Thereafter, on December 16, 2013, the trial court sentenced Appellant to 26½ to 53 years' imprisonment.[4]

_____

[2] We note that although the criminal information is contained within the certified record and was file-stamped on January 30, 2012, it was not entered on the trial court's docket until February 2, 2012.  However, "[a]lthough the trial court docket is part of the official record, when it is at variance with the certified record it references, the certified record controls." ***Shelly Enters., Inc. v. Guadagnini***, 20 A.3d 491, 494 (Pa. Super. 2011). As a result, we conclude that Appellant was charged on January 30, 2012.

[3] 18 Pa.C.S.A. §§ 901(a), 3121(a)(2), 3124.1, 3125(a)(1), 3125(a)(3), 2903(a), and 2706(a)(1), respectively.

[4] Specifically, the trial court sentenced Appellant to a term of imprisonment of eight and one-half to 17 years for aggravated assault.  On the conviction
*(Footnote Continued Next Page)*

On December 23, 2013, Appellant filed a timely post-sentence motion asserting the verdict was against the weight of the evidence and challenging the discretionary aspects of sentencing. On April 22, 2014, the trial court denied Appellant's post-sentence motion. Appellant filed a timely notice of appeal on May 21, 2014.[5]

On appeal, Appellant presents the following three issues for our review.

1. Was there insufficient evidence to conclude that [] Appellant used forcible compulsion based on prior consensual sexual encounters between the victim and the Appellant?

2. Did the trial court err in denying Appellant's post[-]sentence motion because the jury's verdict against [] Appellant was so against the weight of the evidence as presented at trial so as to shock one's sense of justice?

_(Footnote Continued)_ ————————

for rape by forcible compulsion, the trial court sentenced Appellant to a term of imprisonment of nine and one-half to 19 years. On the conviction for aggravated indecent assault by forcible compulsion, the trial court sentenced Appellant to a term of imprisonment of five to ten years. On the conviction for unlawful restraint, the trial court sentenced Appellant to a term of imprisonment of three and one-half to seven years. All the sentences were imposed to run consecutively.

[5] The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and Appellant timely filed his Rule 1925(b) statement. In its Rule 1925(a) opinion, the trial court discusses Appellant's challenge to the sufficiency of the evidence and directs this Court to its April 29, 2014 opinion for its discussion of its reasons for denying Appellant's post-sentence motion on the remaining issues. Trial Court Opinion, 7/22/14.

3. Did the trial court abuse its discretion by imposing an unduly harsh and unreasonable sentence when it imposed sentences in the upper end of the aggravated range and ordered all sentences to be served consecutively because the trial court failed to consider Appellant's rehabilitative needs with the public's safety?

Appellant's Brief at 7.

In his first issue, Appellant contests the sufficiency of the evidence the Commonwealth presented to convict him of the above-mentioned charges. *Id.* at 22. Specifically, Appellant contends "in the present case, there is insufficient evidence to conclude that the victim did not consent to this conduct." *Id.* at 23. Appellant argues that he and K.N. had a sexually active relationship that ended four days prior to the incident. *Id.* He claims that on the night of the incident, he met K.N. for drinks after which he went to her apartment. *Id.* Appellant maintains that K.N. voluntarily followed him to the bedroom where they engaged in consensual sex twice. *Id.* at 24. Appellant suggests "K.N. fabricated the story because she wanted to get back at Appellant for not reciprocating her romantic advances." *Id.* at 26.

Our standard of review for challenges to the sufficiency of the evidence is well settled. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014) (citation

omitted), *cert. denied*, **Patterson v. Pennsylvania**, --- S.Ct. ---, 2015 WL 731963 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" **Id.** (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Orie**, 88 A.3d 983, 1014 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied,* **Diamond v. Pennsylvania**, 135 S. Ct. 145 (2014).

Instantly, Appellant was convicted of aggravated assault, rape by forcible compulsion, aggravated indecent assault by forcible compulsion, and unlawful restraint. A person commits aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally,

knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Further, a person is guilty of rape by forcible compulsion "when the person engages in sexual intercourse with a complainant [b]y forcible compulsion." *Id.* § 3121(a)(1). Additionally, a person commits aggravated indecent assault by forcible compulsion when the person "engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures … by forcible compulsion." *Id.* § 3125(a)(2). Finally, a person is guilty of unlawful restraint if "he knowingly … restrains another unlawfully in circumstances exposing him to risk of serious bodily injury." *Id.* § 2902(a)(1). With regards to each of these crimes, Appellant's sole argument is that K.N. consented to conduct. Appellant's Brief at 23.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict-winner, the evidence belies Appellant's contention that the Commonwealth did not demonstrate forcible compulsion. Regardless of the prior sexual relationship between Appellant and K.N., our review of the record clearly demonstrates that the sexual assault by Appellant on November 4-5, 2011 was not consensual. As detailed above, Appellant violently assaulted K.N. against her will, both physically and sexually. During the assault, K.N. testified that Appellant strangled her on at least three occasions, beat her, and told her he was going to kill her. N.T.,

9/3/13, at 115-126. He also digitally penetrated her and raped her twice. *Id.* at 122-126. As a result of these attacks, K.N. sustained extensive injuries to her neck, chest, eye, back, buttocks, scalp, genital region, both arms, both legs, and both hands, which were consistent with her description of events. N.T., 9/4/13, at 260-285. A forensic pathologist testified that these injuries were not consistent with consensual sex or rough sex. *Id.* at 301-302, 310, 314-315. Accordingly, the totality of the evidence presented at trial overwhelmingly establishes the forcible, nonconsensual nature of the assault and clearly supports the jury's verdict beyond a reasonable doubt. *See Patterson*, *supra*. As a result, Appellant is not entitled to relief on his first issue. *See Diamond*, *supra*.

In his second issue, Appellant contends "[t]he jury's verdict in this case was against the weight of the evidence presented at trial and shocks one's sense of justice." Appellant's Brief at 27. We begin by acknowledging that "[a] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). Our Supreme Court has clarified that, "[a] motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Weathers*, 95 A.3d 908, 910-911 (Pa. Super. 2014), *quoting Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008), *appeal denied*,

106 A.3d 726 (Pa. 2014). Therefore, on appeal, the reviewing court "reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Id.* Indeed, it is well established that it is for the factfinder to determine the weight given to the evidence produced at trial. *Commonwealth v. Ferguson*, 107 A.3d 206, 212 (Pa. Super. 2015) (citation omitted). Because it is the role of the factfinder to weigh the evidence, an appellant seeking to challenge the weight of the evidence carries a heavy burden.

> If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.

*Id.* at 212-213. We also highlight that "[a] new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses." *Commonwealth v. Gonzalez*, --- A.3d ---, 2015 WL 252446, at *8 (Pa. Super. 2015). "[O]nly where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (emphasis in original, citation omitted).

Instantly, Appellant claims that the evidence was inconsistent and "not indicative of a forcible sexual encounter." *Id.* Instead, Appellant maintains the weight of the evidence shows a sexual encounter that "got out of hand

- 11 -

and [was] too rough, but … did not rise to the level of a nonconsensual sexual experience." *Id.* at 28. Specifically, Appellant claims there was no history of violence in the relationship, K.N. invited Appellant to her house after the two met for drinks that evening, and neither she nor her parents initially wanted the police involved. *Id.* at 28-31.

However, the jury heard the evidence of Appellant's physical and sexual assault on K.N. as detailed above, and was free to find K.N.'s testimony credible and resolve any inconsistencies in the Commonwealth's favor. The jury was free to find that the sexual encounter was not consensual. *See Commonwealth v. Horne*, 89 A.3d 277, 286 (Pa. Super. 2014) (concluding weight of the evidence claim could not prevail as "the jury resolved the inconsistencies among the testimonies as it saw fit and reached a verdict[]"), *appeal denied*, 102 A.3d 984 (Pa. 2014). As an appellate court, we will not reweigh the evidence and substitute our judgment for that of the factfinder. *Commonwealth v. Serrano*, 61 A.3d 279, 289 (Pa. Super. 2013) (citation omitted). The trial court thoroughly reviewed Appellant's challenge to the weight of the evidence and concluded, "it is clear that the verdict is not so contrary to the evidence as to shock the conscience, and a new trial is not warranted." Trial Court Opinion, 4/29/14, at 10. Based on these considerations, we conclude the trial court did not commit a palpable abuse of discretion in denying Appellant's motion for a

new trial based on the weight of the evidence. ***See Morales***, ***supra***.

Accordingly, Appellant is not entitled to relief on his second issue.

Appellant's third issue raises a challenge to the discretionary aspects of sentencing. Appellant's Brief at 31. We begin by noting our well-settled standard of review.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citations omitted), *appeal denied*, 105 A.3d 736 (Pa. 2014).

> It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal. [Therefore, b]efore we reach the merits of this issue, we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. [I]f the appeal satisfies

each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Edwards***, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Instantly, Appellant has met the first two requirements by filing a timely notice of appeal and by raising his sentencing claim in his post-sentence motion. However, Appellant's brief does not include a Rule 2119(f) statement of reasons relied upon for allowance of appeal. Nevertheless, because the Commonwealth does not object to this procedural defect, we will not find waiver. ***See Commonwealth v. Antidormi***, 84 A.3d 736, 759 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014). Consequently, we must determine whether Appellant has presented a substantial question that his sentence is inappropriate under the sentencing code. ***See Edwards***, ***supra***.

Appellant asserts that his sentence of 26½ to 53 years' imprisonment was "in the aggravated range at each count, with all sentences running consecutively[,]" which "was excessive[,] and the trial court's refusal to downwardly modify the sentence was in error." ***Id.*** at 34-35. Specifically, Appellant contends that the trial court failed to impose an individualized sentence when it departed from the probation office's recommendation of 16 to 36 years' and instead punished Appellant based on the circumstances of the crime alone. ***Id.*** at 35-36, *citing* ***Commonwealth v. Devers***, 546 A.2d 12, 13 (Pa. 1988). This Court has held that "a claim that the [trial] court

erred by imposing an aggravated range sentence without consideration of mitigating circumstances raises a substantial question." *Commonwealth v. Felmlee*, 828 A.2d 1105, 1107 (Pa. Super. 2003) (*en banc*) (citation omitted).  We therefore proceed to review the merits of Appellant's claim.

Appellant asserts that "the trial court's refusal to follow th[e] recommendation [of the probation office] was in error when balancing the protection of the public with his rehabilitative needs."  Appellant's Brief at 36.  Specifically, Appellant cites his successful completion of his last period of state parole supervision as well as his incarceration while pending trial in this case for 736 days without any documented disciplinary problems.  *Id.* at 35.  Appellant claims this "demonstrate[s] that he is amenable to rehabilitation and complies with probation and prison authorities."  *Id.*

After conducting our own review of Appellant's claim, along with a review of the sentencing hearing, we conclude the trial court's sentence was appropriate.  The trial court noted that it "consider[ed] the protection of the public and [Appellant]'s rehabilitative needs, as well as various other factors," including the following.  Trial Court Opinion, 4/29/14, at 11.

- The [p]re-[s]entence [i]nvestigation report submitted by the York County Probation Department; []

- The statement by the victim, [K.N.] (both verbal and written); []

- Argument by [Appellant's] [c]ounsel; []

- The statement by [Appellant]; []

- Argument by the Commonwealth; []

- The fact that [Appellant] is not RRRI eligible and that the Commonwealth was not willing to waive that ineligibility; []

- The mitigated range sentence, standard range sentence, and aggravated range sentence for each crime [Appellant] was convicted of; []

- The Offense Gravity Score (OGS) for each offense; []

- The fact that the Prior Record Score (PRS) is a 5; and

- The manner, nature and circumstances surrounding the crimes committed by [Appellant] (the sentencing [j]udge is also the [j]udge who presided over the trial and heard all the evidence).

*Id.* at 11-12 (citations omitted). The trial court noted that it took into account Appellant's and the Commonwealth's arguments as well as the sentencing memoranda. Further, it took into account the York County Probation Department pre-sentence investigation report (PSI). It is axiomatic that where "the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Rhoades***, 8 A.3d 912, 919 (Pa. Super. 2010) (internal quotation marks and citation omitted), *appeal denied*, 25 A.3d 328 (Pa. 2011), *cert. denied*, ***Rhoades v. Pennsylvania***, 132 S.Ct. 1746 (2012). The trial court also noted

Appellant's refusal to cooperate with the probation department in the preparation of the PSI. N.T., 12/16/13, at 9. The PSI noted "Paul McKenzie declined to make any statement on this matter and plans to appeal his conviction[.]" *Id.* Thus, to the extent that the PSI was incomplete, it was a result of Appellant's unwillingness to participate in the PSI process. Further, the trial court delineated the following reasons for imposing an aggravated range sentence.

> We note that we have imposed aggravated range sentences on the [Appellant] in this case because of the vicious and prolonged nature of the attacks [Appellant] committed on someone who trusted him. We find that the aggravated range sentences are called for because the offender inflicted extreme mental cruelty on the victim during the course of the commission of his crimes; that he inflicted extreme physical cruelty on the victim during that same period of time; that he injured the victim; that the victim's injuries substantially were in excess of the minimum necessary to prove the crimes committed; that the victim was in a position of trust and confidence of [Appellant]; that [Appellant] is a danger to society; that [Appellant] had just very recently completed a parole supervision or probation supervision on prior criminal charges; that [Appellant] has been subject to previous incarceration; that [Appellant], given the nature of his criminal record and his actions in regards to the crimes he committed in this case, is a poor candidate for rehabilitation; that the prosecution recommended the sentences imposed; and that any lesser sentence imposed upon [Appellant], given the nature and circumstances of the crimes he committed, would depreciate the seriousness of those crimes and the manner in which he committed them. I don't think it's inappropriate to liken what [Appellant] did to this victim as torture, threatened to kill, choked her, restrained

- 17 -

> her, chased after her when she tried to escape, injured her, raped her, and did so over a long period of time.

N.T., 12/16/13, at 11.

The foregoing clearly demonstrates that the trial court was fully aware of all of the mitigating circumstances. The trial court acknowledged it was going beyond the standard sentencing guideline recommendations and imposing a sentence in the aggravated range and noted its reasons for doing so on the record. Specifically, the trial court addressed Appellant's prior completion of state parole supervision, which Appellant asserts as a reason for a mitigated sentence. It viewed that fact, among others, as showing Appellant was not amenable to rehabilitation. The trial court did not abuse its discretion simply because it drew the opposite inference from this fact as Appellant desired. *See Raven*, *supra*. Accordingly, we conclude that the trial court did not abuse its discretion in sentencing Appellant in this case. *Id.* Appellant is therefore not entitled to relief on his third issue.

Based on the foregoing, we conclude Appellant's claims are meritless. Accordingly, we affirm the trial court's December 16, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/6/2015</u>